UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| DONNA WILLIAMS, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | Case No. 2:14 CV 38 CDP |
| JUDGE FREDERICK TUCKER, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before me on defendant Sheriff Kevin Shoemaker's motion to dismiss plaintiffs' amended complaint. Shoemaker argues that plaintiff Linda Jenkins has failed to properly state a First Amendment retaliation claim against him under 42 U.S.C. § 1983 and that qualified immunity protects him from liability. After careful consideration, I conclude that plaintiff has pled facts sufficient to state a claim against Shoemaker, and it is not clear on the face of the complaint that Shoemaker is entitled to qualified immunity. Therefore, I will deny Shoemaker's motion to dismiss.

**I.   Motion to Dismiss Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court

assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Neitzke*, 490 U.S. at 327.

## II. **Background**[1]

The plaintiffs' complaint alleges two counts. The first count contains allegations made only by plaintiff Donna Williams against Tucker, and the second count contains allegations made by Jenkins against Tucker and Shoemaker. I will discuss only the facts relevant to the claims against Shoemaker.

---

[1] The facts contained herein are taken from the allegations set out in the plaintiffs' complaint. They are considered true for the purpose of this Memorandum and Order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

Jenkins has been employed by the Macon County Sheriff's Office as a bailiff for fifteen (15) years and as a sheriff's deputy for sixteen (16) years. During the events that serve as the basis for her claim, she was working as a bailiff in the courtroom of Judge Tucker. In 2012, Tucker ran for reelection as Circuit Judge of the 41st Judicial Circuit of Missouri and was reelected on November 6, 2012. Jenkins was a "known political supporter" of Tucker's opponent in the election.

After the election, Tucker told Jenkins he only wanted people who supported him working for him. Thereafter, at Tucker's direction, Shoemaker, who was the Macon County Sheriff, cut Jenkins' work hours. This had the effect of changing Jenkins' status from a full-time employee to a part-time employee and rendering her no longer eligible for employment benefits through the sheriff's office. Shoemaker also denied Jenkins "distribution of a state grant intended for supplementing the salary of all Missouri Sheriff's deputies." Jenkins avers that because she worked as a bailiff in Tucker's courtroom, Mo. Rev. Stat. § 478.240.2 gave Tucker the authority to order Shoemaker to change the terms and conditions of Jenkins' employment. She claims that Tucker and Shoemaker's actions were taken in retaliation for her support of Tucker's opponent in the circuit judge election and are therefore a violation of the First and Fourteenth Amendments.

## III. Discussion

Shoemaker argues that Jenkins' claims against him must be dismissed on two grounds. First, he claims he is entitled to qualified immunity from Jenkins' claim, because it is clear from the face of her complaint that he was acting in reliance upon Mo. Rev. Stat. § 478.240.2 and that he had an objectively reasonable belief that his actions were appropriate in light of the statute. Second, Shoemaker argues that Jenkins has failed to state a claim against him because her complaint is devoid of factual assertions establishing that her political speech was a substantial or motivating factor in Shoemaker's actions.

### A. Qualified Immunity

Qualified immunity protects state officials from civil liability for actions that "[do] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether Shoemaker is entitled to qualified immunity, I must consider two questions: (1) whether the facts that Jenkins has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of Shoemaker's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Shockency v. Ramsey County*, 493 F.3d 941, 947-48 (8th Cir. 2007). "Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity can be established on the

face of the complaint." *Bradford v. Huckabee*, 330 F.3d 1038, 1041 (8th Cir. 2003). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

Shoemaker's argument in support of qualified immunity centers on the existence of Missouri Revised Statute § 478.240.2, which grants the presiding judge of any circuit court in Missouri "general administrative authority over all judicial personnel and court officials in the circuit…." Mo. Rev. Stat. § 487.240.2. Shoemaker argues that the complaint asserts that he was acting entirely at the direction of Tucker when he reduced Jenkins' hours. He claims he is entitled to qualified immunity because, due to the statute, "[t]he contours of the right asserted by Plaintiff Jenkins were not sufficiently clear that Defendant Shoemaker would have known that he was violating Ms. Jenkins' rights." And "based upon the statute [he] could have held an objectively reasonable belief that his actions were appropriate."[2] Jenkins' allegations preclude Shoemaker's qualified immunity defense for the reasons discussed below.

---

[2] Shoemaker's qualified immunity defense does not address Jenkins' claim that he, alone, denied her supplemental salary distributions in retaliation for her political speech. As a result, even if I were to conclude that Shoemaker is entitled to qualified immunity for changing Jenkins' employment status at Tucker's direction, Shoemaker must still remain in the case to defend Jenkins' allegations that he denied her salary distributions.

### 1. **The facts alleged by Jenkins properly make out a violation of a constitutional right.**[3]

Under the first part of the qualified immunity analysis, Jenkins' complaint successfully states a claim of retaliation for the exercise of First Amendment rights. To state such a claim, a public employee must allege that: (1) she engaged in activity protected by the First Amendment, (2) she suffered an adverse employment action and (3) that there was a causal connection between the protected activity and the adverse employment action. *Davison v. City of Minneapolis*, 490 F.3d 648, 654-55 (8th Cir. 2007); *Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir. 2001).

For the first element, to understand whether Jenkins engaged in speech protected by the First Amendment, I must follow a two-step inquiry. *See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)*; *Bradford*, 330 F.3d at 1040-41. First, I must determine whether Jenkins' political support for Tucker's campaign rival was a matter of public concern. I conclude that it was. *See Duckworth v. Ford*, 995 F.2d 858, 861 (8th Cir. 1993) (support of political candidate is matter of public concern and protected by the First Amendment); *Darnell v. Ford*, 903 F.2d 556,

---

[3] Although Shoemaker's motion to dismiss does not appear to make any argument under this first part of the qualified immunity inquiry, he has separately argued that she failed to state claim of First Amendment retaliation. Additionally, the 8th Circuit has found that even if a defendant concedes, under the first prong, that a First Amendment right has been violated, it is still necessary to determine, under the second prong, whether the plaintiff engaged in speech protected by the First Amendment. *See Nord v. Walsh County*, 757 F.3d 734, 739 (8th Cir. 2014). In light of all of this, I will address the first part of the qualified immunity analysis despite Shoemaker's apparent decision not to argue it.

563 (8th Cir. 1990) (support for or opposition to political candidate involves matter of public concern); *see also Shockency*, 493 F.3d at 948 (electoral activities are protected by the First Amendment) *citing Burson v. Freeman*, 504 U.S. 191, 196 (1992) ("the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office") (citation omitted).

Next, I must balance Jenkins' right to speak, against the interest of the Sheriff's office in promoting efficiency by prohibiting her speech. *See Hafley,* 90 F.3d at 267 *citing Pickering v. Board of Educ.* 391 U.S. 563, 568 (1968). There is no indication at this stage that Jenkins' speech had any effect on the efficient functioning of the Sheriff's office. Indeed, the complaint states that no verbal or written complaints have ever been made against Jenkins. Assuming all allegations of the complaint are true, Jenkins' support of Tucker's campaign opponent was protected under the First Amendment because her right to political speech outweighed her employer's interest in prohibiting it.

Jenkins' has also properly pled the second element of a First Amendment retaliation claim. She alleges her employment status changed from full-time to part-time resulting in a loss of pay and all benefits – this is sufficient to constitute an adverse employment action. *See Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005)("[a]n adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities").

Finally, under the facts alleged by Jenkins it could reasonably be inferred that when Shoemaker and Tucker reduced Jenkins' hours, they did so in retaliation for her political support of Tucker's opponent. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Shoemaker argues that Jenkins has failed to state a retaliation claim because she has failed to allege that Shoemaker knew of her political affiliation or that his employment actions were based upon her political affiliation. But Jenkins' complaint avers that both of the defendants cut Jenkins' hours specifically "in retaliation for her political speech activities." Furthermore, Jenkins asserts that she is a long-term employee of the Sheriff's office who has had no verbal or written complaints made against her. She claims she was a "known" political supporter of Tucker's opponent, and Shoemaker was a political supporter of Tucker. Taken together, under these facts one could reasonably infer that when, shortly after the election, Shoemaker reduced Jenkins' hours and denied her supplemental salary distributions, he did so with knowledge of her political affiliation and in retaliation for her support of Tucker's opponent. *See Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (in analyzing a motion to dismiss, the court draws all reasonable inferences in favor of the nonmoving party).

In sum, under the first part of the qualified immunity inquiry, Jenkins has properly alleged the violation of a constitutional right.

### 2. Jenkins' First Amendment right was clearly established at the time of Shoemaker's alleged misconduct.

Shoemaker's argument as to the second inquiry of the qualified immunity analysis is unpersuasive at this stage in the litigation. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted). "[R]eliance on a state statute, regulation or official policy that explicitly sanctioned the conduct in question is a relevant factor in considering the objective legal reasonableness of a state official's action." *Coates v. Powell*, 639 F.3d 471, 477 (2011) (internal quotation marks omitted) *quoting Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003). *See also Wilson v. Layne*, 526 U.S. 603, 617 (1999).

In arguing that Mo. Rev. Stat. § 478.240.2 supports his qualified immunity defense, Shoemaker's motion analogizes this case to the facts of *Coates v. Powell*, 639 F.3d 471 (8th Cir. 2011). In *Coates*, the defendant police officer, who was

assisting a social worker with a child neglect investigation, remained inside the plaintiff's home in violation of the Fourth Amendment. *Id*. at 476-77. In holding that the officer was entitled to qualified immunity, the Court reasoned that under the second prong of the analysis, a reasonable police officer would not have known that he violated clearly established Fourth Amendment law because he was acting pursuant to a state statute that obligated him to accompany and assist the social worker. *Id*. at 477. In other words "[i]t was not clearly established at the time of this incident that an officer was required to leave a private home in the middle of a child neglect investigation." *Id*.

Like *Coates*, Shoemaker argues that Mo. Rev. Stat. § 478.240.2 authorized, or even obligated, him to follow Tucker's order to reduce Jenkins' hours despite clearly established First Amendment law prohibiting retaliation for political speech. He claims Mo. Rev. Stat. § 478.240.2 caused him to hold an objectively reasonable belief that his actions were appropriate. However, unlike the statute in *Coates*, which specifically directed law enforcement officials, like the defendant police officer, to assist in child neglect investigations, *see id*. at 473 n.3, the statute here has nothing to do with county sheriffs like Shoemaker. The only government officials whose actions are contemplated by Mo. Rev. Stat. § 478.240.2 are presiding circuit judges. Here, the statute cannot be said to "explicitly [sanction] the conduct in question," *Coates*, 539 F.3d at 477, where the party whose conduct

is at issue is not even referenced in the statute.[4] Therefore, I conclude that Mo. Rev. Stat. § 478.240.2 does not render Shoemaker's otherwise unconstitutional actions objectively reasonable.

Even if, as Shoemaker suggests, Mo. Rev. Stat. § 478.240.2 could be construed to authorize personnel actions by sheriffs, this alone is still insufficient to satisfy the second part of the qualified immunity inquiry. "It is well established that a government employer cannot take adverse employment actions against its employees for exercising their First Amendment rights." *Shockency*, 493 F.3d at 948, *citing Connick v. Meyers*, 461 U.S. 138, 142 (1983). A statute granting a government official mere "general administrative authority" over court personnel does not authorize him, or any official carrying out his orders, to use that authority to retaliate against employees for their protected political speech. Based on the face of the complaint, I conclude that a reasonable official in Shoemaker's position would have understood that what he was doing violated Jenkins' First Amendment

---

[4] Like *Coates*, the other cases cited by Shoemaker in support of this point also deal with statutes contemplating conduct by the specific official who is claiming qualified immunity. *See, e.g., Kloch v. Kohl*, 545 F.3d 603 (8th Cir. 2008) (attorney general was protected by qualified immunity because state statute obligated him to enforce the laws of his state); *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009) (defendant detective entitled to qualified immunity where a state statute authorized the reporting of child abuse cases by law enforcement agencies); *Mills v. Graves*, 930 F.2d 729 (9th Cir. 1991) (defendant detective entitled to qualified immunity where a state statute authorized seizure of drug paraphernalia by law enforcement officials).

rights. Therefore, he has failed to make out a qualified immunity affirmative defense at this time.[5]

   B.   **Failure to State a Claim**

For the reasons discussed above, I conclude that Jenkins' has properly stated claim of First Amendment retaliation.

   Accordingly,

   **IT IS HEREBY ORDERED**, that defendant Kevin Shoemaker's motion to dismiss [#16] plaintiffs' amended complaint is **DENIED**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of February, 2015.

---

[5] This ruling does not foreclose Shoemaker's ability to assert a qualified immunity affirmative defense if the factual record later indicates that it would be appropriate.